Grafton
Nos. 7518 & 7519

EDWARD NICHOLS

v.

RAYMOND HELGEMOE, WARDEN
NEW HAMPSHIRE STATE PRISON
STATE OF NEW HAMPSHIRE

v.

EDWARD NICHOLS

January 31, 1977

58

Edward Nichols, pro se.

*David H. Souter*, attorney general, and *Richard B. Michaud*, of Concord (*Mr. Michaud* orally) for the state.

*Stebbins & Bradley* and *Daniel J. Connolly* of Hanover (*Mr. Connolly* orally) for defendant Edward Nichols.

BOIS, J. In these appeals Edward Nichols seeks relief from his conviction for first-degree manslaughter. The first appeal involves a petition for writ of habeas corpus alleging the unconstitutionality of the provisions of RSA 651:45 III, inserted by Laws 1973, chapter 370:37, as amended by Laws 1975, chapter 244:1, regarding parole eligibility requirements. The second involves defendant Nichols' motion to set aside verdict and sentence and raises questions as to the plea proceedings, the charge to the jury, the sentence and the effectiveness of defendant's counsel. After hearing, the motion to set aside verdict and sentence was denied by the Court (*Johnson*, J.), and defendant's exceptions reserved and transferred. Questions raised by the habeas corpus petition were also reserved and transferred without ruling.

The victim of the homicide for which Edward Nichols was prosecuted was an elderly woman who was found in bed in her apartment, strangled to death. Evidence also indicated she might have been raped. The defendant was an acquaintance who, by his own admission to police authorities, had been visting with her

near the time of her death. He has always maintained that he never attacked the victim and that when he left the apartment she was in good health.

The defendant was indicted on charges of first-degree murder and first-degree murder while perpetrating rape (RSA 585:1, since repealed) and a jury trial resulted in a finding of guilt only as to the lesser-included offense of first-degree manslaughter. The substantial evidence supporting the conviction was circumstantial in nature.

The prosecution, in addition to the defendant's proximity to the crime, produced evidence that a pair of the defendant's pants was bloodstained and bore fibers matching those of the victim's bathrobe, and that after but not before the homicide defendant's face had certain scratch marks. Defendant also had made certain inculpatory remarks to his friends.

 Defendant's initial contention is that the court should have informed him of the lesser-included offense of manslaughter at the time of his arraignment and *not guilty* plea. It is well established that a guilty plea constitutes a waiver of numerous constitutional rights and thus cannot be effectively entered without an intelligent understanding of the offense charged. *Boykin v. Alabama,* 395 U.S. 238 (1969). A plea of not guilty preserves all of the accused's rights. Defendant offers no authority for the proposition that a court must instruct as to the nature of the offense when a not guilty plea is entered, and we have found none. Moreover, at the hearing on the motion defendant's trial counsel testified to his clear recollection of pretrial discussions with the defendant as to lesser-included offenses. The defendant therefore can claim no prejudice from the alleged deficiencies at his plea proceeding.

 The next contention relates to sentencing. RSA 625:2 II provides that in any prosecution for an offense committed prior to the effective date of the new criminal Code "the court may, with the consent of the defendant, impose sentence under . . . [the] code." The defendant argues that solely upon his election he is entitled to be sentenced under the more lenient Code provisions. The wording of the statute makes clear, however, that sentencing under the Code is in the discretion of the court. Our cases reject defendant's argument. *State v. McMillan,* 116 N.H. 126, 352 A.2d 702 (1976); *State v. McMillan,* 115 N.H. 268, 339 A.2d 21 (1975).

 The defendant proposes that his sentence to a term of imprisonment of from twenty-five to thirty years, constituted an abuse of discretion in light of the fifteen-year maximum term authorized by the Code. RSA 651:2 II(a). The sentencing here took place prior to the effective date of the Code. The legislature clearly contemplated that pre-Code offenders could be subject to punishment under pre-Code law, and the punishment imposed, which may well have reflected the brutal nature of the homicide, was within the then existing statutory limit. *State v. McMillan*, 116 N.H. 126, 352 A.2d 702 (1976); *State v. Belanger*, 114 N.H. 616, 619, 325 A.2d 789, 791 (1974).

The defendant next argues that the trial court should have instructed the jury on second-degree manslaughter. RSA 585:9 then defined it as "[e]very killing of one human being by the act, procurement, or culpable negligence of another, which is not murder, nor excusable nor justifiable homicide, nor manslaughter of the first degree . . . ." First-degree manslaughter, on the other hand, then encompassed manslaughter "not . . . murder, nor excusable nor justifiable homicide . . . perpetrated with a design to effect death . . . ." RSA 585:8.

 No request for such an instruction was made to the court. However, even had such a request been made, it would have been properly refused. An instruction as to a lesser-included offense is proper only when a conviction as to the lesser offense would be compatible with the evidence at trial. *State v. O'Brien*, 114 N.H. 233, 317 A.2d 783 (1974). The evidence showed strangulation of the victim and the defendant attempted to prove that he had no involvement whatsoever in the circumstances of the homicide. There was no rational basis upon which the jury could conclude that the defendant had both perpetrated the homicide and yet not been guilty of at least first-degree manslaughter. *See Sparf and Hansen v. United States*, 156 U.S. 51 (1895); *United States v. Klugman*, 506 F.2d 1378 (8th Cir. 1974); *State v. O'Brien supra.*

Defendant's final contention is that he was not rendered the effective assistance of counsel. There are several claims of ineffective assistance but the defendant principally relies on the allegedly deficient efforts of his counsel with respect to the evidentiary use of his bloodstained pants.

There is no dispute that the torn pants found in defendant's possession after the crime belonged to him. The defendant ad-

vanced two arguments by which he hoped to diminish their evidentiary relevance. One was that the stains were the innocent result of a fight between him and his girlfriend several months prior to the murder during which the defendant, wearing the pants, had received a particularly bloody gash on his head. The second was that the defendant, frustrated with the deteriorating condition of the pants, had torn them severely several days prior to the murder, making them unwearable. The girlfriend was a prosecution witness and her beneficial testimony in support of both of these alleged incidents was elicited on cross-examination. Defendant complains that there was an additional corroborative witness to each of these incidents, and that counsel failed to present this additional testimony.

At the hearing below, counsel testified that, while aware of these additional witnesses, he deliberately chose not to present their testimony. His reasons were threefold: First, the substance of the beneficial testimony had already been elicited from a prosecution witness, a factor helpful to credibility; second, the additional witnesses were friends of the defendant, and their credibility doubtful; third, there was a risk that one of the witnesses might have been forced to testify to a certain incident damaging to the defendant.

It may be that the judgment of counsel was not the best course. We do not, however, sit to second-guess the tactical, informed decisions of counsel. *Heath v. Vitek,* 115 N.H. 200, 337 A.2d 345 (1975); *State v. Fleury,* 111 N.H. 294, 282 A.2d 873 (1971); *Petition of Graham,* 106 N.H. 545, 215 A.2d 697 (1965). It is clear from the record that the defendant was afforded able representation. Counsel achieved some measure of success, inasmuch as the state secured a conviction only on the lesser-included offense of first-degree manslaughter. In the petition for habeas corpus, the defendant contends that legislative changes in parole eligibility requirements have operated as ex post facto laws or bills of attainder. The pertinent changes are as follows: In June 1975, the legislature enacted an "Act Relative to Uniformity of Parole Eligibility Requirements for Prisoners Sentenced Prior to the Effective Date of the Criminal Code," providing generally that a pre-Code prisoner's minimum term for the purpose of determining parole eligibility would be the shorter of either his actual minimum sentence or the longest minimum sentence which could

have been imposed for a class A felony under the Code. Laws 1975, 244:1. Before the effective date of this statutory change (September 2, 1975), the provision was amended by RSA 651:45 (Supp. 1975) (Laws 1975, 506:1) providing an identical rule of law but excepting from its operation prisoners guilty of certain classes of pre-Code homicide, including first-degree manslaughter (the defendant's offense).

■ Defendant argues that the latter enactment is unconstitutional because it takes away a benefit conferred by the prior enactment. This argument is devoid of any factual merit because the prior enactment was amended before its effective date, and thus never conferred any benefit. *Kennelly v. Lowery*, 64 Cal. App. 2d 903, 149 P.2d 476 (1944); *see* 2A J. Sutherland, Statutes and Statutory Construction § 33.07 (4th ed. C. Sands 1973). The defendant's eligibility for parole has remained unchanged and he has no cause for complaint. *Breest v. Helgemoe*, 117 N.H. 40, 369 A.2d 612 (1977).

*Petition denied; exceptions overruled.*

DOUGLAS, J., did not sit; the others concurred.