Merrimack
No. 84-406

## WALTER WOODMAN, JR.

v.

## MICHAEL J. CUNNINGHAM, WARDEN, NEW HAMPSHIRE STATE PRISON

May 8, 1985

*Pizzimenti & Immen,* of Concord (*Dennis L. Pizzimenti* on the brief and orally), for the plaintiff.

*Stephen E. Merrill,* attorney general (*Ronald F. Rodgers,* assistant attorney general, on the brief and orally), for the defendant.

BROCK, J. The plaintiff is an inmate at the New Hampshire State Prison. On May 26, 1982, he filed a petition for a writ of habeas corpus against the prison's warden, raising various issues regarding the loss of good conduct credits. In *Woodman v. Perrin*, 124 N.H. 545, 474 A.2d 999 (1984), we dealt with several issues in the case, remanding others to the trial court.

After a hearing, the Superior Court (*DiClerico*, J.) transferred to this court without ruling the following question:

> "Where a prison inmate is credited by the prison with 90 days of statutory good conduct credits (R.S.A. 651:55-b I) for each year of his minimum sentence upon imposition of the sentence, and the inmate later escapes from custody, under R.S.A. 651:55-b III(a) (now R.S.A. 651-A:22 IV(a)), does the inmate suffer the loss of all statutory good conduct credits that had originally been given to him, or does he lose only the number of statutory good conduct credits relating to the time actually served by the inmate from imposition of the sentence to the date of escape?"

The relevant facts may be briefly stated. On April 10, 1972, the plaintiff was sentenced to life imprisonment, with credit for eleven months and five days of pretrial confinement. He is deemed to have an eighteen-year minimum sentence. At the time of sentencing, he was credited with 1,620 days of "statutory good time credits," as well as other credits not relevant here.

On May 1, 1981, the plaintiff escaped. He was subsequently recaptured, and the warden ruled that all 1,620 days of his statutory good time credits had been forfeited. The petition in the instant case was filed in protest of that ruling.

We begin by noting that both the transferred question and the briefs submitted by the parties appear to incorporate an incorrect assumption. The plaintiff's statutory good time credits were not awarded under former RSA 651:55-b, I (1973), which did not become effective until November 1, 1973. The credits at issue were awarded under former RSA 607:51-b, I (1971), which was in effect at the time of the plaintiff's sentencing.

The latter statute reads, in pertinent part:

> "Any prisoner may by good conduct and obedience to the rules of said prison earn credit against both the minimum and maximum terms of his sentence as follows:
>
> I. Ninety days for each full year of the minimum term of his sentence, prorated for a part of any such year . . . ."

The same statute provided that "[a]ny serious act of misconduct or

insubordination . . . shall subject the prisoner to the loss of all or any portion of such credits, at the discretion of the warden." *Id.*

It was not until 1979 that former RSA 651:55-b was amended to include a provision that a prisoner who escaped would "automatically suffer the loss of all accrued good conduct credits." Laws 1979, 319:1 and 407:4.

As we noted in *Woodman v. Perrin*, 124 N.H. at 548, 474 A.2d at 1001, "[f]ormer RSA 651:45, III (Supp. 1981) (repealed by Laws 1983, 461:33) makes the law in effect as of the time of a prisoner's sentencing govern the terms of that prisoner's release from prison."

We need not decide, however, whether this precludes application of former RSA 651:55-b, III(a) (since recodified at RSA 651-A:22, IV(a)) to this plaintiff. Even assuming *arguendo* that the statute applies, its reference to "accrued" credits does not prohibit the warden's action here.

The plaintiff points out that the first part of former RSA 607:51-b (later RSA 651:55-b, since repealed) speaks of a prisoner's "earning" credits "by good conduct and obedience to the rules." He argues from this that credits may be "accrued," under either paragraph I or paragraph II of the statute, only as they are "earned." It follows, the argument runs, that the amount of statutory (paragraph I) good conduct credits subject to forfeiture for escape can never be greater than ninety days multiplied by the prisoner's actual time served.

The warden responds that the phrase "minimum term," as used in paragraph I, has been construed by this court to refer to an inmate's minimum sentence, rather than to time served, *see Nichols v. Helgemoe*, 117 N.H. 57, 61–62, 369 A.2d 614, 617–18 (1977), *cited in Piper v. Perrin*, 560 F. Supp. 253, 257 (D.N.H. 1983), and that credits earned and accrued are, therefore, computed on the basis of minimum sentence. This construction has for many years been the basis for the computation of prisoners' parole eligibility dates. *See Piper v. Perrin supra.*

For example, the 1,620 days credited to the plaintiff here under the warden's system would result (assuming no other credits were earned, and none forfeited) in the plaintiff's eligibility for parole after serving approximately thirteen and one-half years. Under the plaintiff's interpretation, however, at the end of that time he would have "earned" only about 1,215 days of statutory credits, and would not be eligible for parole for almost another year, depending on how often the credits were prorated.

■ "We have held that where a statute is of doubtful meaning, the long-standing practical and plausible interpretation applied by the agency responsible for its implementation, without any interfer-

ence by the legislature, is evidence that the administrative construction conforms to the legislative intent." *Hamby v. Adams*, 117 N.H. 606, 609, 376 A.2d 519, 521 (1977).

If the legislative intent in this case had conformed to the plaintiff's interpretation of the words "earned" and "accrued," it would mean that since at least 1971, when former RSA chapter 607 became effective, the warden has been releasing prisoners much sooner than the legislature intended. In such circumstances, we have no doubt that the legislature would have acted swiftly to correct the warden's misinterpretation. It did not do so. The law was not changed until 1983, when the provision for statutory good conduct credits was eliminated. Laws 1983, 461:16.

The warden's interpretation is consistent with an apparent legislative intent to discourage prisoners from escaping early in their terms, by providing for a substantial loss of good time credits on escape, regardless of time served.

The warden's interpretation is also consistent with the language of former RSA 607:41-a (1971) (in effect when the plaintiff was sentenced) and former RSA 651:45-a (1973) (in effect at the time of his escape). Both would have made him eligible for parole "after having served eighteen years which shall be deemed the minimum term of his sentence for the purposes of this section, minus any credits earned . . . ." This use of the phrase "minimum term" corresponds to its use in former RSA 651:55-b, and supports the construction given that phrase in *Nichols. Piper v. Perrin*, 560 F. Supp. at 257.

We conclude that statutory good conduct credits were both "earned" and "accrued" when the plaintiff's parole eligibility date was first computed; *i.e.*, at the start of his sentence. The forfeiture of 1,620 days of statutory good time credits was accordingly proper. Because the parties agree that this is the only remaining issue in the case, we remand the case to the superior court with instructions to deny the plaintiff's petition for a writ of habeas corpus.

*Remanded.*

KING, C.J., and SOUTER, J., did not sit; the others concurred.